**Dr. Theril REEDY et al., Plaintiffs,**

v.

**Bill Mack MULLINS et al., Defendants.**

**Civ. A. No. 77–0028.**

United States District Court,
W. D. Virginia,
Big Stone Gap Division.

Sept. 1, 1978.

---

S. Strother Smith, III, Smith, Robinson & Vinyard, Abingdon, Va., for plaintiffs.

Henry S. Stout, Jr., Mullins, Winston & Roberson, Norton, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Plaintiffs Dr. Theril Reedy, Mrs. Versie Reedy, and Mrs. Betty Reedy Cole, whose building located in Clintwood, Virginia, was destroyed by fire, commenced in this court this action under 42 U.S.C. §§ 1981, 1983, 1985, and 2000d, claiming $280,000 actual damages and $560,000 punitive damages. Although plaintiffs alleged no proper jurisdictional grounds, the court assumed jurisdiction under 28 U.S.C. § 1343(3).

The complaint alleges that defendant Bill Mack Mullins, as mayor and town councilman of Clintwood, and defendants Carroll Dotson and Kermit Rakes, as town councilmen, unconstitutionally deprived plaintiffs of their right to adequate municipal fire protection. This action is currently before the court on defendants' motion for summary judgment under Fed.R.Civ.P. 56. Defendants have filed supporting affidavits, and plaintiffs have responded with counter-affidavits.

This action is properly before the court for summary judgment, as the material facts gleaned from the parties' affidavits, are not in dispute. On February 2, 1977,

fire destroyed plaintiffs' commercial building in Clintwood, Virginia. At that time, Clintwood provided fire protection with equipment that included three firetrucks and several portable pumps. It is alleged by plaintiffs and not disputed by defendants that said equipment was paid for by federal, state and local taxes. When the alarm sounded at 11:33 a. m., the fire chief had properly authorized the newest of the firetrucks to go to Norton, Virginia, for maintenance. Assistant fire chief Billy Ray Hylton and defendant Bill Mack Mullins were using the 1968 firetruck and several of the portable pumps within the town limits of Clintwood to help unclog the town's frozen water lines. The 1949 model firetruck was in the firehall.

Both the 1968 and the 1949 firetrucks responded and arrived at the fire. Ultimately, the newest firetruck and several fire companies from neighboring communities appeared at the scene, but despite the firemen's efforts, the fire completely destroyed the plaintiffs' building. Plaintiffs claim that their loss directly resulted from defendants' alleged misuse of the firefighting equipment.

As this court perceives the complaint, the thrust of plaintiffs' claim is that defendants as town officials took plaintiffs' fire protection right under the color of authority without due process of law. Plaintiffs allegedly find this deprivation primarily in defendants' use of the fire equipment in an effort to free the frozen water lines. Plaintiffs contend that such use not only broke some of the equipment but also delayed the fire department's response to the alarm.

Plaintiffs assert that the defendants, as governing town officials, were not free to use the fire trucks at their discretion, but should have gotten permission from the people of Clintwood through a procedural due process hearing. This court finds plaintiffs' contention devoid of merit.

In support of their claim that they were deprived of adequate fire protection without due process of law, plaintiffs cite *Memphis Light, Gas and Water Division v. Craft,* —— U.S. ——, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), where the United States Supreme Court found a "property" interest in the right not to have service terminated by a municipal utility without cause. Plaintiffs argue that they had a similar property right in municipal fire protection.

■ The court finds plaintiffs' argument totally without support. The Fourteenth Amendment places procedural constraints on governmental actions that work a deprivation of "property" interests encompassed by the meaning of the Due Process Clause. However, plaintiffs have failed to show that expectations of adequate municipal fire protection rise to the stature of "property". These substantive property interests are not created by the Federal Constitution but by an independent source, such as state law. Once the substantive interest is found, federal law determines whether the interest has constitutional protection. *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In their complaint plaintiffs contend that the American system of government and the Constitution are based on a "Social Contract", wherein the citizens pay taxes to support their government, and the government in consideration thereof furnishes protection and conveniences for the taxpayers. Therefore, plaintiffs reason that the town government of Clintwood has a "Social Contract" with its citizens to furnish such services as fire protection, which is a vested contract right.

The court finds plaintiffs' reliance on vague notions of the "Clintwood Social Contract" as establishing a "property" right totally unpersuasive. *Memphis Light, Gas and Water,* bases its result on Tennessee case law in finding that state law did not allow utility termination of services at will. Plaintiffs have failed to make a comparable showing that Virginia case law requires adequate municipal fire protection. Although defendants herein are sued as individuals

under Section 1983 and not as a municipality, plaintiffs' assertion of a "property" right in fire protection is further weakened by Virginia case law stating that a municipality is not liable for failure to extinguish fires. *City of Richmond v. Warehouse Corp.*, 148 Va. 60, 138 S.E. 503 (1927), Annot. 54 A.L.R. 1485 (1928).

■ *Memphis Light, Gas and Water* is further distinguishable from the case *sub judice*. Municipal utilities such as electricity, gas, and water are operated like a commercial business, with each customer contracting individually with the utility and paying individually for the electricity, gas, and water actually used. There is no such contractual arrangement for municipal fire protection in Clintwood. Firefighting is a governmental function. *See City of Richmond v. Warehouse Corp., supra.*

■ In summary, there is no support for plaintiffs' broad claim that a municipality is constitutionally required to provide adequate fire protection, even though the municipality has undertaken such service. *Shortino v. Wheeler,* 531 F.2d 938 (8th Cir. 1976). If this court were to find a Fourteenth Amendment "property" right in fire protection, such that Clintwood officials were constitutionally required to hold a procedural due process hearing before using a fire engine for emergency municipal purposes other than responding to a fire, then this would place every governing body in an untenable position, destroying their decisionmaking process.

■ Even if the existence of a Fourteenth Amendment "property" right was seriously at issue here, this court finds that the qualified immunity described in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), exonerates the defendants in the case at bar. This qualified good faith immunity, endorsed by the Court for public school officials in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *reh. den.* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975), applies in Section 1983 actions. Depending upon the scope of discretion and responsibilities of the office, executive officers acting on reasonable grounds coupled with a good faith belief enjoy this immunity from personal liability.

Defendants' actions fall squarely within the protection of this qualified immunity. Clintwood had been suffering for several weeks from severe cold weather. Water lines were frozen, and two-thirds of the town was without water. Defendants were reasonable and acting in good faith in believing that an emergency existed which justified the use of firefighting equipment to help clear Clintwood's water lines.

In using the fire equipment, defendant Bill Mack Mullins as mayor complied with Article II, Section 5 of the Clintwood Volunteer Fire Department Bylaws. Defendant Mullins reasonably believed that an emergency existed, and as directed by the Bylaws, assistant fire chief Billy Ray Hylton accompanied the 1968 engine and equipment in the efforts to clear the water lines. Defendants used the equipment within the Clintwood town limits for a municipal purpose.

Although there have been no cases directly on point with the case at bar, the principal of qualified immunity has been widely recognized. *See, e. g. Skinner v. Spellman,* 480 F.2d 539 (4th Cir. 1973); *Nelson v. Knox,* 256 F.2d 312 (6th Cir. 1958); *M. J. Brock & Sons, Inc. v. City of Davis,* 401 F.Supp. 354 (N.D.Cal.1975); *Paxman v. Wilkerson,* 390 F.Supp. 442 (E.D.Va.1975).

Failure to recognize the qualified immunity would severely hamper a municipal official's ability to govern and exercise the necessary discretion of his office. Using fire-fighting equipment in an effort to thaw water lines—water lines that also supplied fire hydrants—was an entirely appropriate action by defendants. The affidavits submitted by the parties reveal no malice on the part of defendants; to the contrary, only the best of good faith is shown. Public policy will not permit defendants, in the good faith exercise of discretion, to be charged with the unfortunate loss of plaintiffs' building.

Although plaintiffs have commenced their action under various statutes, includ-

ing 42 U.S.C. §§ 1981, 1985, and 2000d, as well as § 1983, the court's holding disposes of plaintiffs' various claims.

Summary judgment is hereby entered in favor of all defendants. The case is ordered dismissed and stricken from the docket.

The Clerk of this court is directed to send certified copies of this Memorandum Opinion and Order to counsel of record.